FILED

2026 MAY 13  PM 3: 05

CLERK. U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
                    DEPUTY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

TAURUS WRIGHT,                          §
    Petitioner,                       §
                                      §
v.                                      §         Cause No. EP-25-CV-462-DCG
                                      §
CHARISMA EDGE, *Warden*, FCI La Tuna,   §
    Respondent.                       §

## MEMORANDUM OPINION AND ORDER

Petitioner Taurus Wright, Federal Prisoner Number 51585-051, challenges the execution of his sentence through a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241. Pet'r's Pet., ECF No. 1. His opposed petition is dismissed because he failed to exhaust his administrative remedies.

## BACKGROUND

Wright is a 44-year-old prisoner confined at the La Tuna Federal Correctional Institution in Anthony, Texas, which is within the jurisdiction of this Court. *See* Federal Bureau of Prisons, Find an Inmate, www.bop.gov/inmateloc (search for Reg. 51585-051, last visited May 5, 2026). His projected release date is May 18, 2027. *Id.*

On or about April 6, 2020, Wright knowingly possessed a firearm in Lea County, New Mexico, while on probation for a prior offense and after multiple felony convictions that were punishable by a term of imprisonment exceeding one year. *United States v. Wright*, 5:20-cr-01837-RB (D. N.M.), Plea Agreement, ECF No. 19 at 4. He pleaded guilty to felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). *Id.*, J. Crim. Case, ECF No. 28. He was sentenced to 96 months' imprisonment followed by three years' supervised release. *Id.*

During his imprisonment, Wright was punished for multiple disciplinary infractions. Resp't's Resp., Ex. 1 (Decl. of Christine Wohld), ECF No. 9-2 at ¶ 17; *id.*, Attach. 4, Inmate

Discipline Data, ECF No. 9-6. He was found guilty of possessing a hazardous tool, a cellphone, in October of 2024 and again in April of 2022. In March of 2022, he was caught destroying and disposing of an item during a search. *Id.* All three violations were level 100 prohibited offenses which were offenses of the greatest severity.

Wright alleges that Respondent Warden Charisma Edge has not properly applied his First Step Act Earned Time Credits ("FTCs"). Pet'r's Pet., ECF No. 1 at 1. He claims that "[i]f properly applied, [his FTCs] would [have advanced] his release date from October 2025 to April 2025." *Id.* at 2. He argues that he is not required to exhaust his administrative remedies, "as the delay would render his [FTCs] meaningless once his release date passes." *Id.* at 2. He asks that the Court order Warden Edge to immediately apply his FTCs and "recalculate his release date." *Id.* at 3, 4.

## STANDARD OF REVIEW

A prisoner's "[c]hallenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus." *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973)). A prisoner may attack "the manner in which his sentence is carried out or the prison authorities' determination of its duration" through a petition for a writ of habeas corpus under 28 U.S.C. § 2241. *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000) (citations omitted). To prevail, a prisoner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c).

## ANALYSIS

### A. Exhaustion

The Fifth Circuit has long held that the Bureau of Prisons (BOP) should be permitted to administratively rectify an error if it fails to properly calculate a sentence. *Smith v. Thompson*, 937

F.2d 217, 219 (5th Cir. 1991). "In the event that a prisoner feels he has been improperly refused credit for time he has served in … custody, the prisoner must first 'seek administrative review of the computations of [his] credit, and, once [he has] exhausted [his] administrative remedies, [the] prisone[r] may only then pursue judicial review of these computations.'" *United States v. Setser*, 607 F.3d 128, 133 (5th Cir. 2010) (quoting *United States v. Dowling*, 962 F.2d 390, 393 (5th Cir. 1992)); *see also Falcetta v. United States*, 734 F. App'x 286, 287 (5th Cir. 2018) (holding that "dismissal for lack of jurisdiction was appropriate because [the petitioner] failed to show that he exhausted his sentencing credit claim fully through the multi-step BOP exhaustion procedure prior to filing his § 2241 petition.").

While there are exceptions to the exhaustion requirement "where the available administrative remedies either are unavailable or wholly inappropriate to the relief a prisoner seeks, or where the attempt to exhaust such remedies would itself be a patently futile course of action," such exceptions apply only in "extraordinary circumstances." *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994) (citations omitted). And a petitioner bears the burden of demonstrating such circumstances.

Wright does not claim that he exhausted his administrative remedies or that any exception to the exhaustion requirement applies. *See* Pet'r's Pet., ECF No. 1 at 2. He has submitted five requests for administrative remedies during incarcerations after his two convictions. Resp't's Resp., Ex. 2 (Decl. of Johnna Burrows), ECF No. 9-7 at ¶ 10; *id.*, Attach. 2 (Administrative Remedy Generalized), ECF No. 9-8. In four of those cases, his requests were related to receiving credit for time served between August 24, 2009, and September 2, 2011, on a prior case, *United States v. Wright*, 2:09-cr-03502-RB (D. N.M.). *Id.*, Ex. 2 (Decl. of Johnna Burrows), ECF No. 9-

3

7 at ¶ 11. *Id.* His only other request was related to a bid to have his encumbrances and restrictions removed. His requests were not related to his FTCs.

Wright argues that he need not exhaust his administrative remedies because habeas corpus under § 2241 is a constitutional right—and requiring him to exhaust would abrogate that constitutional right. Pet'r's Pet., ECF No. 1 at 2. He is wrong. *Setser*, 607 F.3d at 133.

Wright "must first pursue all available administrative remedies" before seeking relief under § 2241. *Fillingham v. United States*, 867 F.3d 531, 535 (5th Cir. 2017). And his exhaustion in this context means "proper exhaustion," including his compliance with all administrative deadlines and procedures established by the BOP. *Cf. Woodford v. Ngo*, 548 U.S 81, 90 (2006) (discussing exhaustion in the context of the Prison Litigation Reform Act).

The Court finds that Wright has failed to exhaust his administrative remedies or carry his burden of proving the futility of an administrative review. *Fuller*, 11 F.3d at 62 (explaining federal prisoners must exhaust "administrative remedies before seeking habeas relief in federal court under 28 U.S.C. § 2241."). It notes that dismissal on this basis alone is warranted. *See Rivkin v. Tamez*, 351 F. App'x 876, 877–78 (5th Cir. 2009) (per curiam) (affirming dismissal of prisoner's § 2241 petition for failure to exhaust administrative remedies). But even if Wright had properly exhausted his claims, the Court would not grant him the § 2241 relief he seeks.

## B. Alternatively, Wright's Petition Lacks Merit

Wright alleges that Warden Edge has not properly computed and applied his FTCs to his sentence. Pet'r's Pet., ECF No. 1 at 1. He claims that "[i]f properly applied, [his FTCs] would advance his release date from October 2025 to April 2025." *Id.* at 2. He asks that the Court issue an order directing Warden Edge to immediately grant him his FTCs and "recalculate his release

date." *Id.* at 3, 4.

The First Step Act allows an eligible prisoner to earn FTCs toward time in prerelease custody or supervised release. 18 U.S.C. § 3632(d)(4)(A). But it requires a prisoner to first undergo a "Prisoner Assessment Tool Targeting Estimated Risk and Needs" ("PATTERN") assessment to establish whether he has a "minimum, low, medium, or high risk for recidivism," and to assign appropriate programing and activities. *Id.* § 3632(a)(1). It gives qualifying prisoners the opportunity to accrue ten days of FTCs for every 30 days of successful participation in Evidence Based Recidivism Reduction ("EBRR") programs and Productive Activities ("PAs"). *Id.* § 3632(d)(4)(A)(i). It allows qualifying prisoners at a "minimum" or "low risk" of recidivating to accrue an additional five days of FTCs if they do not increase their risk levels over two consecutive assessments. *Id.* § 3632(d)(4)(A)(ii). It permits qualifying prisoners to apply FTCs toward prerelease community-based placement in a residential reentry center or home confinement. 18 U.S.C. § 3624(g)(2); 28 C.F.R. § 523.44(b)–(c). And, at the discretion of the Director, it permits qualifying prisoners to apply FTCs toward their early release to supervision. 18 U.S.C. § 3624(g)(3); 28 C.F.R. § 523.44(d).

There is a statutory distinction between accruing and applying FTCs. See 18 U.S.C. §§ 3632(d)(4)(A) and (C) (establishing separate schemes for accruing credits and applying them). For an otherwise eligible prisoner to have his accrued FTCs applied toward his prerelease community placement or early release to supervision, he must:

> (B) [have] shown through the periodic risk reassessments a demonstrated recidivism risk reduction or has maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment;
>     ...
> (D)

5

(i) in the case of a prisoner being placed in prerelease custody, the prisoner --

(I) has been determined under the System to be a minimum or low risk to recidivate pursuant to the last 2 reassessments of the prisoner; or

(II) has had a petition to be transferred to prerelease custody or supervised release approved by the warden of the prison, after the warden's determination that --

(aa) the prisoner would not be a danger to society if transferred to prerelease custody or supervised release;

(bb) the prisoner has made a good faith effort to lower their recidivism risk through participation in recidivism reduction programs or productive activities; and

...

(ii) in the case of a prisoner being placed in supervised release, the prisoner has been determined under the System to be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner.

18 U.S.C. § 3624(g)(1).

Wright's PATTERN recidivism risk level was and remains medium. Resp't's Resp., Ex. 1 (Decl. of Christine Wohld), ECF No. 9-2 at ¶ 11; *id.*, Attach. 2 (PATTERN Assessment), ECF No. 9-4. On August 13, 2025, he petitioned Warden Edge for a transfer to prerelease custody or supervised release despite his medium PATTERN score. *Id.*, ECF No. 9-2 at ¶ 16. But his petition was denied based on his offense, disciplinary history, continuing danger to society, and failure to make a good faith effort to lower his recidivism level. *Id.*, ECF No. 9-2 at ¶ 19. Consequently, he was not eligible to have his FTCs applied toward his prerelease custody or supervised release. *See* BOP Program Statement 5410.01, Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4), at 15 ("Ordinarily, inmates considered inappropriate for early transfer to prerelease custody or supervised release under section (c)(2) include, but are not limited to, inmates who ... [h]ave a high or medium PATTERN recidivism risk level.").

Wright has failed to show that Warden Edge failed to comply with the applicable statute or otherwise erred in determining his projected release date.

6

## CONCLUSIONS AND ORDERS

The Court concludes that Wright has failed to exhaust his administrative remedies. It further concludes that his claims lack merit. The Court accordingly enters the following orders:

**IT IS ORDERED** that Petitioner Taurus Wright's "Petition for Writ of Habeas Corpus under to 28 U.S.C. § 2241" (ECF No. 1) is **DISMISSED WITHOUT PREJUDICE** for failure to exhaust his administrative remedies.

**IT IS FURTHER ORDERED** that all pending motions are **DENIED.**

**IT IS FINALLY ORDERED** that the District Clerk shall **CLOSE** this case.

**IT IS SO ORDERED.**

SIGNED this 13th day of May 2026.

DAVID C GUADERRAMA
SENIOR UNITED STATES DISTRICT JUDGE